# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ISAAC LUNA ASHTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0229-GKF-JFJ |
| | ) | |
| RICK WHITTEN,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Petitioner Isaac Luna Ashton, a state inmate appearing through counsel, petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, claiming that his custody under the criminal judgment entered against him in the District Court of Tulsa County, Case No. CF-2014-4108, is unlawful. Respondent Rick Whitten urges the Court to deny the petition. Having considered Ashton's petition [Dkt. 2] and supporting brief [Dkt. 9], Whitten's response in opposition to the petition [Dkt. 14], Ashton's reply brief [Dkt. 20] records from state-court proceedings [Dkts. 2-1 through 2-5, 14-1 through 14-12, 15, 16, 17], and applicable law, the Court finds and concludes that Ashton has not shown that he is in custody in violation of the Constitution or federal laws. The Court therefore denies the petition.

---

[1] Ashton is currently incarcerated at the North Fork Correctional Center (NFCC), in Sayre, Oklahoma. The Court therefore substitutes the NFCC's current warden, Rick Whitten, in place of R.C. Smith, as party respondent. Fed. R. Civ. P. 25(d); Rule 2, *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

## BACKGROUND

### I.    Underlying facts and jury trial

What began as a verbal argument between acquaintances about a missing cell phone ended when Ashton shot and killed Verdell Walker and Tiara Sawyer in the parking lot outside of Ashton's apartment near 47th and Darlington in Tulsa.  *Ashton v. State*, 400 P.3d 887, 891-92 (Okla. Crim. App. 2017).[2]  Immediately after the shooting, Ashton, his girlfriend, Tyesha Goff, and his best friend, Doneka Brown, drove away in a gold Honda CRV.  *Id.*  The trio drove to Ashton's mother's house, in Jenks.  *Id.* at 892.  Law enforcement officers with the Tulsa Police Department interviewed eyewitnesses who identified Ashton as the shooter and learned that the gold Honda CRV was registered to Ashton's mother's address in Jenks.  *Id.*  After a law enforcement officer with the Jenks Police Department located the gold Honda CRV at the Jenks residence, officers from both departments began watching the residence.  *Id.*  At some point, officers saw Brown walked outside and used her phone to call her mother and ask for a ride home. *Id.*  When Brown's mother arrived, Brown, Goff, and Ashton got into the car, and Ashton laid down in the backseat so he could not be seen.  *Id.*  Officers saw Ashton enter the car, initiated a traffic stop, and arrested Ashton.  *Id.*

During a post-arrest interview, Ashton denied knowledge of the shooting and claimed he did not live in an apartment near 47th and Darlington.  *Ashton*, 400 P.3d at 892.  Law enforcement

---

[2] On habeas review, factual findings made by a state court are presumed correct, and the petitioner bears the burden to rebut that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The parties appear to disagree as to whether the Oklahoma Court of Criminal Appeals' statement of the facts, drawn from the opinion affirming Ashton's judgment and sentence, comprises "factual findings" that must be presumed correct [Dkt. 14, Resp. 8-11], or "simply outline[s] the trial testimony of the witnesses" [Dkt. 20, Reply Br. 7-8].  Even assuming Ashton's view that § 2254(e)(1) does not apply, the Court has independently reviewed the trial transcripts and finds support in the record for the OCCA's statement of the facts as referenced in this portion of the opinion.

officers had already obtained evidence to the contrary, including the .38 special revolver that Ashton used to kill Walker and Sawyer and three spent shell casings, all of which Ashton left on top of a dresser at his mother's house. *Id.* at 893.

About ten days after the shooting, the State of Oklahoma filed a felony information in the District Court of Tulsa County, Case No. CF-2014-4108, charging Ashton with two counts of first-degree murder. [Dkt. 15-10, Original Record (O.R.) vol. 1, 35.][3] One year later, Ashton moved to dismiss the charges, claiming he was immune from prosecution, under Oklahoma's "stand-your-ground" law, Okla. Stat. tit. 21, § 1289.25, because he shot both victims in self-defense. [Dkt. 15-11, O.R. vol. 2, 3-6.] The State filed an amended information in October 2015 to add a charge of unlawful possession of a controlled drug (count three), a misdemeanor. [Dkt. 15-11, at 167.]

Following a three-day evidentiary hearing in November 2015, the trial court concluded that Ashton was not immune from prosecution and denied Ashton's motion to dismiss the murder charges. [Dkt. 15-1, Tr. Evidentiary Hr'g 1, 198-203.] When Ashton stated his intent to call Goff as a witness for this evidentiary hearing, the prosecutor suggested a bench conference. [Dkt. 15-1, at 41.] Outside of Goff's presence, the prosecutor told the trial court that Goff may need to speak with an attorney before testifying because the State could charge her as an accessory after the fact for driving Ashton to Jenks immediately after the shooting. [Dkt. 15-1, at 41-43, 45.] Defense counsel agreed that "it would be appropriate that [Goff] consult counsel." [Dkt. 15-1, at 43.] After the bench conference, Goff entered the courtroom, and the trial court told her, "You've been called as a witness in this case, and I think it's in your best interests to go ahead and have counsel appointed for you to represent you as a witness in this case and to advise and consult with you so you'll have your own independent counsel." [Dkt. 15-1, at 46.] The trial court appointed

---

[3] Unless otherwise noted, the Court's citations refer to the CM/ECF header pagination.

counsel for Goff, Goff spoke with the attorney for about two hours, the trial court called Goff to the stand, and, on advice of counsel, Goff invoked her Fifth Amendment privilege and declined to testify.  [Dkt. 15-1, at 47-51.]

After the evidentiary hearing, the State filed a second amended information to add a charge of carrying a weapon unlawfully (count four), a misdemeanor.  [Dkt. 15-12, O.R. vol. 3, 15-16.]  Sometime before trial, Ashton's counsel moved for an order compelling the State to grant immunity to Goff so that she could testify at trial as a defense witness.  [Dkt. 15-3, Tr. Trial vol. 1, 114-43.]  The trial court denied Ashton's motion before trial.  [Dkt. 15-3, at 113-14.]

The case proceeded to a jury trial in November 2015.  [Dkt. 15-3, Tr. Trial vol. 1, 1.]  Before jury selection, Ashton pleaded guilty as to count three, the drug possession charge, and the trial court ordered him to serve one year in jail with credit for time served.  [Dkt. 15-12, O.R. vol. 3, 119-26, 140-43; Dkt. 15-3, at 3-6.]  The remaining charges (counts one, two and four) were tried to the jury.  [Dkt. 15-3, at 15.]  Based on the parties' opposing views of the evidence, the key question for the jury was whether Ashton killed both victims with malice aforethought, as the State alleged, or whether Ashton acted in self-defense, as he claimed.

At trial, several eyewitnesses described the argument that led to the shooting, identified Ashton as the shooter, and described Walker and Sawyer as unarmed participants in the argument.  [Dkt. 15-5, Tr. Trial vol. 3, 76-106; Dkt. 15-6, Tr. Trial vol. 4, 6-30, 47-85, 89-118, 125-144.]  The testimony varied regarding the distance between Walker and Ashton when Ashton pulled out a gun and shot Walker.  Some witnesses testified that the two men were "up face to face," or "within reach of each other."  [Dkt. 15-5, Tr. Trial vol. 3, 88.]  Other witnesses testified the two men were four to seven feet apart from each other.  [Dkt. 15-6, Tr. Trial vol. 4, 85, 98, 100, 132, 143.]  According to two witnesses, Sawyer turned away from Ashton after he shot Walker, as if to run

from Ashton, and Ashton moved toward Sawyer before shooting her.  [Dkt. 15-5, Tr. Trial vol. 3, 86-87; Dkt. 15-6, Tr. Trial vol. 4, 99.]  One witness testified that after Ashton shot Sawyer, Ashton walked over to Walker, who was then lying on the ground, and shot Walker a second time.  [Dkt. 15-5, Tr. Trial vol. 3, 87-88.]

Ashton testified that Walker behaved aggressively toward Goff and Ashton after Goff accused Walker and Sawyer of taking her cell phone, that Walker refused to leave when Ashton tried to calm him down, and that Walker threatened to kill Ashton immediately before the shooting. Dkt. 15-8, Tr. Trial vol. 6, 84-90.]  According to Ashton, just before the shooting Walker either "hit" or "collided with" Goff near the doorway of Ashton's apartment as Goff was coming out the door.  [Dkt. 15-8, at 84-85.]  Ashton then moved to stand between Goff and Walker, and Walker was yelling and would not leave.  [Dkt. 15-8, at 85.]   Ashton then walked forward, and Walker backed up into the parking lot, and the two men stayed about two to three feet apart until they both reached the parking lot.  [Dkt. 15-8, at 86.]  Ashton's efforts to deescalate the situation failed and, when Ashton turned to walk away, Walker came at him and yelled, "I'll kill you motherfuckers." [Dkt. 15-8, at 86-89.]  In response, Ashton pulled out his gun, and said "hold on, hold on."  [Dkt. 15-8, at 89-90.]  Ashton testified that he thought Walker was reaching for the gun, so Ashton jumped back, fired the gun, and shot Walker in the abdomen.  [Dkt. 15-8, at 91-92.]  After the first shot, Ashton looked up, saw Walker coming toward him, closed his eyes, and fired two more shots. [Dkt. 15-8, at 91-92.]  When Ashton opened his eyes, he saw Walker and Sawyer on the ground, panicked, and left the scene with Goff and Brown.  [Dkt. 15-8, at 92-94.]

Dr. Joshua Lanter, a forensic pathologist and medical examiner, performed autopsies on Walker and Sawyer.  [Dkt. 15-7, Tr. Trial vol. 5, 15, 18-19.]  Dr. Lanter testified that Walker died from two gunshot wounds, a head wound and an abdominal wound, both of which were

individually fatal. [Dkt. 15-7, at 41.] He also testified that he observed what appeared to be "soot" on Walker's t-shirt near the abdominal wound. [Dkt. 15-7, at 31-33, 40.] Dr. Lanter testified that Walker had methamphetamine in his system when he died. [Dkt. 15-7, at 30, 53-56.] Dr. Lanter testified that Sawyer died from a gunshot wound to her left temple and that she had contusions and abrasions on the right side of her face that could be consistent with falling on a hard object, such as concrete or asphalt. [Dkt. 15-7, at 41-48, 53-55.]

On cross-examination, defense counsel questioned Dr. Lanter about the "the significance, if any, of soot on clothing surrounding a potential bullet hole." [Dkt. 15-7, Tr. Trial vol. 5, 59.] Dr. Lanter replied:

> Sure. There's findings that one can see around bullet holes or entrance wounds which can give us an idea of the distance the weapon was fired from an individual. For example, when a weapon is fired, not only the bullet comes out of the end of the weapon, there's also burned and unburned gun powder grains. There's also powder from the smoke, it looks like, that comes out of the weapon as well. So what soot essentially is, is this powder being deposited on either clothing or it can actually be on the skin surface.
>
> The reason that's important to note or to see if that's there is that it can give an idea of how far away the weapon was from the individual at the time it was fired.

[Dkt. 15-7, at 59-60.] Lanter further testified, based on his training and experience, "that in a white T-shirt with a typical handgun" soot would be found if the shirt is "about a foot or closer from the weapon." [Dkt. 15-7, Tr. Trial vol. 5, 60.] On redirect examination, the following colloquy occurred between the prosecutor and Dr. Lanter:

> Q.   Okay. Now, regarding what you say – I know you've already explained to us you have no way of knowing if that is soot, but defense counsel asked you some questions about it. Can you tell us how do you – do you know how does it really – what do you have to go through with a ballistic expert to determine how far any weapon was from any individual when they were shot?
>
> A.   Well, to be definitive what's really needed is the actual weapon and the ammunition used. And then when those two are gathered and then test fired, then one can get a better definitive answer exactly the distance we're talking

about.

Q.      All right.  And it does depend upon the gun in the case?

A.      Yes.

Q.      And does it depend on the ammunition?

A.       Yes.

Q.      And would you agree – or are there ballistics experts, as far as you know, that have more expertise than you in that particular area?

A.      Far more experience than me in that area.

[Dkt. 15-7, Tr. Trial vol. 5, 73-74.]

Joy Patterson, a ballistics expert, test-fired the .38 special revolver found at the Jenks home, compared the shell casings from her test fires with the three shell casings found with the revolver, and determined that all shell casings were fired from the same revolver.  [Dkt. 15-7, Tr. Trial vol. 5, 78, 81-90, 108.]  Patterson also testified about the process of determining the distance between a victim and a gun.  [Dkt. 15-7, at 102-03.]  Patterson explained that determining distance would require testing of the victim's clothing, the gun, and the ammunition.  [Dkt. 15-7, at 104.]

During Ashton's case-in-chief, and outside the jury's presence, defense counsel called Goff as a witness.  [Dkt. 15-8, Tr. Trial vol. 6, 149-50.]  Goff was sworn in and, on advice of her court-appointed counsel, she invoked her Fifth Amendment privilege against self-incrimination and declined to testify.  [Dkt. 15-8, at 150.]  Defense counsel argued that because Goff was unavailable, Ashton should be permitted to read to the jury a portion of notes that a prosecutor made to summarize statements Goff made to prosecutors during an interview.  [Dkt. 15-8, at 150-59.]  The trial court found Goff was unavailable but concluded that Goff's statements, as reflected in the prosecutor's notes, were not admissible.  [Dkt. 15-8, at 159.]  Goff did not testify at trial.

At the close of evidence, the trial court instructed the jury on the law related to self-defense,

as to Walker's murder, and instructed the jury that it could consider lesser included offenses of second-degree murder by imminently dangerous conduct (both victims), first-degree manslaughter, heat of passion (Walker), and first-degree misdemeanor manslaughter (Sawyer). [Dkt. 15-13, O.R. vol. 4, 34-54.] Ultimately, the jury found him guilty of first-degree murder with malice aforethought as to both victims, affixed punishment at life imprisonment without the possibility of parole as to both convictions, found him guilty of unlawfully carrying a weapon, and recommended a 90-day sentence as to that conviction. [Dkt. 15-9, Tr. Trial vol. 7, 149; Dkt. 15-2, Tr. Sentencing Hr'g, 2.] The trial court adopted the jury's sentencing recommendations as to the two sentences of life without the possibility of parole, but imposed only a 30-day sentence for the firearm misdemeanor, and ordered all three sentences to be served consecutively. [Dkt. 15-2, at 11-12.]

## II.       Direct appeal and postconviction proceedings

Represented by appellate counsel, Ashton filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), asserting five claims,[4] and requested an evidentiary hearing as to his claim that trial counsel provided ineffective assistance. [Dkt. 14-1, Appellant's Br. 3-5; Dkt. 14-2, Appl. for Hr'g 3-6.] As relevant to this proceeding, Ashton's ineffective-assistance-of-trial-counsel claim alleged, in part, that trial counsel performed deficiently and prejudicially by failing

---

[4] He claimed (1) the trial court violated his constitutional rights to compulsory process and to present a defense (a) by allowing Goff "to invoke her privilege against self-incrimination," (b) by denying his request to order the State to grant Goff immunity in exchange for her testimony, or (c) by refusing to admit her out-of-court statements as statements against penal interest after finding Goff was an unavailable witness, (2) the trial court committed plain error by instructing the jury on flight, (3) the prosecutor violated his constitutional rights to due process and a fair trial through several instances of misconduct, (4) trial counsel deprived him of his constitutional right to the effective assistance of counsel by failing (a) to have evidence tested, (b) to object to the flight instruction, and (c) to object to prosecutorial misconduct, and (5) the cumulative effect of trial errors deprived him of his constitutional right to due process and a reliable sentencing proceeding. [Dkt. 14-1, Appellant's Br. 3-5.]

to have Walker's shirt tested to determine whether the substance that appeared to be "soot" was, in fact, gunshot residue because favorable results would have supported Ashton's testimony that he shot Walker in self-defense.  [Dkt. 14-1, Appellant's Br. 36-38.]  In support of his request for an evidentiary hearing as to this portion of his claim, Ashton presented evidence to the OCCA that appellate counsel submitted Walker's shirt for forensic testing and that the test results confirmed that the "soot" was gunshot residue.  [Dkt. 14-2, at 4-5, 10.]  In a published opinion filed June 1, 2017, the OCCA denied Ashton's application for an evidentiary hearing, rejected each of his claims on the merits, and affirmed his judgment and sentence.  *Ashton v. State*, 400 P.3d 887 (Okla. Crim. App. 2017).  Significantly, in denying his request for a hearing and his ineffective-assistance-of-trial-counsel claim, the OCCA noted that, according to the testimony of the ballistics expert, testing Walker's shirt "was only the first part of the process" and that "both the gun and the ammunition must be tested for completion of the distance determination process."  *Id.* at 901-02.  The OCCA stated that it was "entirely left to speculate as to what completed testing would reveal."  *Id.* at 902.  The OCCA nevertheless found that trial counsel's allegedly deficient performance did not result in prejudice.  *Id.*

Represented by counsel, Ashton applied for postconviction relief in state district court, claiming that appellate counsel deprived him of his constitutional right to the effective assistance of counsel by failing to adequately present his ineffective-assistance-of-trial-counsel claim.  [Dkt. 14-5, Appl. for PC Relief 1, 12-13.]  Specifically, he argued "as outlined by the OCCA on direct appeal, the issue that appellate counsel failed to raise was ineffective assistance of trial counsel for failing to have the gun and ammunition tested, along with the 'soot' on the shirt worn by Walker, in order to determine with reasonable scientific certainty the distance of the gun from the shirt when it was fired."  [Dkt. 14-5, Appl. for PC Relief 12-13.]  He further argued that appellate

9

counsel performed deficiently by failing "to recognize the importance of testing the gun and the ammunition" when the significance of that testing was "clear from the record." [Dkt. 14-5, Appl. for PC Relief 13.] Finally, he argued appellate counsel's deficiencies resulted in prejudice because the OCCA rejected his ineffective-assistance-of-trial-counsel claim on the ground that the testing was incomplete. [Dkt. 14-5, at 10, 13-14; *see Ashton*, 400 P.3d at 902.] Ashton requested an evidentiary hearing and an order that would compel the State to provide him access to the gun and ammunition so that he could develop a record sufficient to show that appellate counsel's deficient performance resulted in prejudice. [Dkt. 14-5, Appl. for PC Relief, 14-15.] In an unpublished order filed October 31, 2018, the state district court denied Ashton's request for an evidentiary hearing and denied his application for postconviction relief. [Dkt. 14-7, Dist. Ct. Order 1, 10-11.] Ashton filed a postconviction appeal and, again, requested an opportunity to test the gun and ammunition and supplement the record through an evidentiary hearing. [Dkt. 14-8, PC Appeal Br. 20-27.] The OCCA denied his request for an evidentiary hearing and affirmed the denial of Ashton's application for postconviction relief in an unpublished order filed April 26, 2019. [Dkt. 14-9, OCCA Order 1, 8-10.]

## DISCUSSION

Ashton claims he is entitled to federal habeas relief because (1) appellate counsel provided ineffective assistance by failing to adequately present his ineffective-assistance-of-trial-counsel claim (claim one), (2) the judge presiding over his postconviction proceeding was not impartial (claim three), (3) the trial court's rulings regarding Goff's invocation of her rights under the Fifth Amendment deprived him of his rights to compulsory process and to present a defense (claim four), (4) several instances of prosecutorial misconduct deprived him of a fair trial (claim five), (5) trial counsel provided ineffective assistance by failing to test and present evidence to support

his theory of self-defense (claim six), and (6) the cumulative effect of certain errors deprived him of a fair trial (claim seven).  [Dkt. 9, Pet'r's Br. 26, 38, 41, 47, 51, 53.][5]

Whitten contends, for various reasons, that Ashton is not entitled to relief as to any of these claims and thus urges the Court to deny the petition.  [Dkt. 14, Resp., generally.]

## I.    Cumulative-error claim (claim seven)

In his seventh claim, Ashton alleges that the cumulative effect of certain errors deprived him of a fundamentally fair trial.  [Dkt. 9, Pet'r's Br. 53-54; Dkt. 20, Reply Br. 38-40.]  Ordinarily, a court should consider a cumulative-error claim last, after having first considered whether any alleged trial errors individually warrant habeas relief.  But Whitten argues, and the Court agrees, that Ashton did not exhaust available state remedies as to claim seven and that he has not made the necessary showings to overcome his procedural default of this claim.  *See Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018) (discussing 28 U.S.C. § 2254(b)(1)(A)'s exhaustion requirement and procedural default).

Ashton asks this Court to consider the cumulative effect of four alleged errors: (1) trial counsel's deficient and prejudicial failure to have the "soot" on Walker's shirt tested to confirm the presence of gunshot residue, (2) appellate counsel's failure to have the gun and ammunition tested when appellate counsel tested Walker's shirt, (3) the fact that "Ashton drew a state court

---

[5] Ashton also asserts, in claim two, that "[t]he Oklahoma courts denied improperly Ashton an evidentiary hearing."  [Dkt. 9, Pet'r's Br. 33-37.]  However, in his reply brief, Ashton clarifies that this is not an independent habeas claim.  Rather, he states, his "position is that the state courts erred in denying him an opportunity to test the gun and the ammunition, that he was diligent in pursuing these tests, and that it is proper for *this Court* to hold an evidentiary hearing as a result." [Dkt. 20, Reply Br. 16 (emphasis in original).]  The Court therefore construes claim two solely as a request for an evidentiary hearing.  And, because Ashton makes clear that he seeks an evidentiary hearing to support claim one, *see* Dkt. 20, at 16-20, the Court will consider his request for an evidentiary hearing when it analyzes claim one.

judge who copied-and-pasted the State's response as his decision in the case on post-conviction and filed it the next day," and (4) the prosecutor's alleged misconduct in "threaten[ing] Tyesha Goff with prosecution if she testified for Ashton" which, Ashton alleges, deprived him of his constitutional right to present a defense.  [Dkt. 9, Pet'r's Br. 53-54.]

Whitten acknowledges, and the record shows, that Ashton raised a cumulative-error claim on direct appeal and that the OCCA rejected it.  [Dkt. 14, Resp. 77; *Ashton*, 400 P.3d at 902.]  But Whitten contends Ashton did not properly exhaust claim seven because the errors Ashton asks this Court to consider in evaluating the cumulative-error claim differ significantly from those he asked the OCCA to consider.  [Dkt. 14, at 77-78.]  The Court agrees.  In this circuit, a cumulative-error claim constitutes a standalone habeas claim subject to the exhaustion requirement and the procedural-default doctrine.  *Darks v. Mullin*, 327 F.3d 1001, 1016-17 (10th Cir. 2003); *Gonzales v. McKune*, 279 F.3d 922, 924-35 (10th Cir. 2002).  Ashton urged the OCCA to consider the combined effect of only those trial errors he asserted in his appeal brief.  [Dkt. 14-1, Appellant's Br. 40.]  Ashton asks this Court to consider as collectively harmful two errors that allegedly occurred at trial, one that allegedly occurred on direct appeal, and one that allegedly occurred during postconviction proceedings.  [Dkt. 9, Pet'r's Br. 53-54.]  Because the claim presented here is not the substantial equivalent of the claim Ashton presented to the OCCA, claim seven is not exhausted and the Court deems it procedurally defaulted.  *Grant*, 886 F.3d at 891-92.  And while he objects to Whitten's assertion that claim seven is unexhausted, Ashton does not argue, and thus does not show, that there is any basis for this Court to excuse the procedural default of claim seven.  [Dkt. 20, at 38-40.]  For these reasons, the Court denies the petition as to claim seven.

## II.    Due-process claim related to postconviction proceeding (claim three)

Ashton claims he was deprived of his right to a fair and impartial judge in postconviction

proceedings, in violation of due process.  [Dkt. 9, Pet'r's Br. 38-41; Dkt. 20, Reply Br. 20-22.]

Ashton exhausted this claim by presenting it to the OCCA through his postconviction appeal.  [Dkt.

14-9, Order (Apr. 26, 2019) 7.]   Whitten contends, however, that this claim does not present a

cognizable habeas claim.  [Dkt. 14, Resp. 33-34.]  The Court agrees. Because this claim alleges a

constitutional defect in his state postconviction proceeding "and not the judgment which provides

the basis for his incarceration, it states no cognizable federal habeas claim." *Sellers v. Ward*, 135

F.3d 1333, 1339 (10th Cir. 1998); *see also Lopez v. Trani*, 628 F.3d 1228, 1229 (10th Cir. 2010)

("Our precedent makes clear that the district court did not err in dismissing claims that related only

alleged errors in the post-conviction proceedings.").[6]  The Court therefore denies the petition as to

claim three.

## III.    Claims presented on direct appeal (claims four, five, and six)

Ashton presented claims four, five, and six to the OCCA on direct appeal.  Because the

OCCA adjudicated each claim on the merits, Ashton must show that the OCCA's adjudication of

each claim "resulted in a decision that" either (1) "was contrary to . . . clearly established Federal

law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established

Federal law," *id.* § 2254(d)(1),[7] or (3) "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

A state court's decision is contrary to Supreme Court precedent "if: (a) 'the state court

---

[6] In his reply brief, Ashton reargues the merits of claim three and asserts that Whitten makes "technical legal arguments" in response to this claim, but Ashton does not squarely address Whitten's argument that claim three is not cognizable on habeas review.  [Dkt. 20, Reply Br. 20-22.]

[7] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

applies a rule that contradicts the governing law set forth in Supreme Court cases'; or (b) 'the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent.'" *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)). Notably, the state court need not mention, or even be aware of, relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

When the state court "'identifies the correct governing legal principle' in existence at the time" of its decision, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the decision resulted from an objectively unreasonable application of the law, a petitioner must show something more than an erroneous application of the law. Rather, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A petitioner may also challenge the reasonableness of factual underpinnings of the state court's decision on a federal claim. Under § 2254(d)(2), a petitioner must show that the state court's decision is based on "an unreasonable determination of the facts" that were developed in the state court proceeding. "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1170-

72 (10th Cir. 2011)).  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Rather, under § 2254(d)(2), the reasonableness of a factual determination is measured by *Richter*'s fairminded-disagreement standard.  *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017); *see also Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (*per curiam*) (reiterating that "if [*Richter*'s] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision); *Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").[8]

## A.  Rights to compulsory process and to present a defense (claim four)

Ashton claims he was deprived of his constitutional rights to compulsory process and to present a complete defense when the trial court (1) permitted his girlfriend, Tyesha Goff, to invoke her Fifth Amendment privilege against self-incrimination; and (2) denied Ashton's request to admit the prosecutor's notes regarding Goff's out-of-court statements.  [Dkt. 9, Pet'r's Br. 41-46.]

### 1.  Clearly established federal law

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  The sources of this guarantee include "the Due Process Clause of the Fourteenth Amendment," and "the Compulsory Process or

---

[8] In addition, a federal court must presume the correctness of the state court's factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Confrontation clauses of the Sixth Amendment." *Id.* The right to present a complete defense is fundamental, but not absolute. Specifically, a criminal defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). And the Supreme Court has explained that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). But evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote" may not be enforced in a way that infringes on the fundamental right to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

The Constitution also guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment's privilege against self-incrimination "protects a witness as well as an accused party." *United States v. Rivas-Macias*, 537 F.3d 1271, 1276 n.8 (10th Cir. 2008) (quoting 8 Wigmore on Evidence § 2252 (McNaughton rev. 1961)). In *Rivas-Macias*, the United States Court of Appeals for the Tenth Circuit noted "the tension that arises when" the fundamental right to present a complete defense and the Fifth Amendment right against self-incrimination "collide." 537 F.3d at 1277. Summarizing Supreme Court precedent, the Tenth Circuit explained,

> On the one hand, an individual's privilege against self-incrimination, rooted in our society's "traditional respect for the individual," *Maness v. Meyers*, 419 U.S. 449, 461 (1975), serves to ensure the continued vitality of our accusatorial system of justice. *See Garner v. United States*, 424 U.S. 648, 655 (1976); *see also Rogers v. Richmond*, 365 U.S. 534, 541 (1961) (affirming that "ours is an accusatorial and not an inquisitorial system" of justice). The privilege safeguards against the recurrence of the evils associated with the Inquisition and the Star Chamber, *see Michigan v. Tucker*, 417 U.S. 433, 440 (1974), by ensuring the Government produces evidence sufficient to convict an individual through the "independent labor of its officers," rather than the "simple cruel expedient of forcing" incriminating information from that individual's own lips. *Mitchell v. United States*, 526 U.S. 314, 326 (1999).

Of course, an individual cannot avoid his duty to testify merely by voicing his own fears of self-incrimination and reciting the Fifth Amendment's familiar terms. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951); *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997). For the privilege to apply, an individual must face "some authentic danger" of self-incrimination. *Castro*, 129 F.3d at 229; *see also Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972) ("It is well established that the privilege protects against real dangers, not remote and speculative possibilities."); *Ullmann v. United States*, 350 U.S. 422, 439 (1956) (clarifying that the privilege's "sole concern" is with the "danger to a witness forced to give testimony leading to the infliction of 'penalties affixed' to "criminal acts"). When no further danger of incrimination is present, the privilege ceases to apply. *See Mitchell*, 526 U.S. at 326; *see also Brown v. Walker*, 161 U.S. 591, 600 (1896) (stating the prohibition against an individual being "compelled to testify against himself presupposes a legal detriment to the witness arising from the exposure"). Accordingly, the privilege generally remains available, absent a valid waiver, until an individual's "sentence has been fixed and the judgment of conviction has become final." *Mitchell*, 526 U.S. at 326; *see also Maness*, 419 U.S. at 466 (noting an individual may waive the privilege); *Rogers v. United States*, 340 U.S. 367, 373-74 (1951) (same).

On the other hand, a defendant's right to present a defense is also a keystone of our legal system. *See United States v. Hernandez–Hernandez*, 519 F.3d 1236, 1238 (10th Cir. 2008). Indeed, few rights are more fundamental than a defendant's right to testify, present witnesses in his own defense, and cross-examine witnesses against him. *See id.* at 1239; *Markey*, 393 F.3d at 1135. We have repeatedly recognized, however, that the right to present a defense, "while fundamental, is not absolute." *Hernandez–Hernandez*, 519 F.3d at 1238; *see also United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005); *Markey*, 393 F.3d at 1135; *United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998). In appropriate cases, a defendant's right to present a defense must bow to accommodate legitimate, competing interests in the criminal trial process. *See Serrano*, 406 F.3d at 1215. Traditional testimonial privileges—including the Fifth Amendment privilege against self-incrimination—represent legitimate trial interests sufficient to force a defendant's right to present a defense to give way. *See id.*; *Valdez v. Winans*, 738 F.2d 1087, 1089 (10th Cir. 1984).

*Rivas-Macias*, 537 F.3d 1271, 1277-81 (10th Cir. 2008) (footnotes omitted).

## 2.    Analysis

The OCCA understood Ashton's brief as asserting three arguments to support his claim that his right to present a defense was violated: (1) "that the trial court erred when it allowed Goff to invoke the privilege against self-incrimination," (2) "that the trial court should have granted Goff immunity in exchange for her testimony pursuant to Article II, Section 27 of the Oklahoma

17

Constitution," and (3) "that the trial court erred when it failed to admit Goff's out-of-court statement(s) under the statement against interest hearsay exception." *Ashton*, 400 P.3d at 893-95. In this proceeding, Ashton appears to challenge the OCCA's decision as to only the first and third arguments. Dkt. 9, Pet'r's Br. 41-46; Dkt. 20, Pet'r's Reply Br. 23-28.

### a. Goff's Fifth Amendment right

As to the first argument, the OCCA identified the same clearly established federal law that the Tenth Circuit discussed in *Rivas-Macias*. *Ashton*, 400 P.3d at 893-94. The OCCA stated, in part,

> The United States Supreme Court has always broadly construed the protection of the Fifth Amendment. *Maness v. Meyers*, 419 U.S. 449, 461, 95 S. Ct. 584, 592, 42 L. Ed. 2d 574 (1975). "Th[e] privilege applies to anyone called as a witness, not just to the accused in a criminal trial; it is not limited to answers which would directly incriminate the witness in the instant proceeding, but extends to any incriminating consequences which would flow from compelled disclosure." *Pavatt*, 2007 OK CR 19, ¶ 43, 159 P.3d at 286. "[It] does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness*, 419 U.S. at 461, 95 S. Ct. at 592. "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S. Ct. 697, 705, 19 L.Ed.2d 889 (1968).

*Ashton*, 400 P.3d at 894. Applying these principles, the OCCA concluded that the trial court did not abuse its discretion when it permitted Goff to invoke her Fifth Amendment right against self-incrimination. *Id.* The OCCA reasoned:

> Goff was confronted by a substantial and real hazard of incriminating herself for the offense of Accessory to Felony. 21 O.S.2011, § 175. The prosecutor specifically mentioned this offense when she sought to protect Goff's rights at the pre-trial evidentiary hearing. The evidence at trial appeared to potentially support the filing of such a charge. Certainly, Goff would have tended to incriminate herself if she admitted that she had driven Appellant away from the scene and, thus, helped him avoid or escape arrest. Inst. No. 2-2, OUJI-CR(2d) (Supp. 2015). However, it is also reasonably likely that Goff's answers to questions concerning

18

the events prior to that would have tended to incriminate her or supply a link in the chain of evidence, as well.  If Goff acknowledged that Appellant shot and killed Walker and Sawyer without any provocation, this would have tended to establish the third element of the offense of Accessory to Felony, *i.e.*, knowledge that the offender had committed the acts constituting the underlying felony.  *Id.*  As the privilege against self-incrimination extends to both direct incrimination as well as information which would furnish a link in the chain of evidence that could lead to prosecution, Goff's privilege extended to protect her from testifying about any portion of the day's events.  Accordingly, we find that the trial court did not err when it allowed Goff to invoke the Fifth Amendment privilege against self-incrimination.

*Ashton*, 400 P.3d at 894.

Ashton strongly disagrees with the OCCA's decision on this point.  He contends that "[t]here was no logical or legal basis for the state courts to extend to Goff her Fifth Amendment rights, and she was allowed to not testify for Ashton by the state courts in violation of *Maness* and Ashton's right to present a defense in the form of a material eyewitness."  [Dkt. 20, Reply Br. 27.][9] The Court rejects this contention for three reasons.  First, the OCCA's decision does not contradict *Maness*, it applies it.  Second, on the facts presented, the OCCA reasonably applied *Maness* and *Marchetti* when it determined that Goff faced a "substantial" and "real" risk of self-incrimination if she testified.  *Maness*, 419 U.S. at 461; *Marchetti*, 390 U.S. at 53.  Ashton asserts that allowing Goff to invoke her Fifth Amendment privilege was a "farce" because "[t]he State obviously had no intention of prosecuting Goff, and have not to this day, nor will it."  Dkt. 9, Pet'r's Br. 44, 46.

---

[9] Citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), Ashton also argues that the OCCA should have found it "clear that the trial court erred in granting Goff's invocation of her Fifth Amendment rights because [Goff] obviously *waived* them by making the statement to prosecutors and to the defense."  Dkt. 9, Pet'r's Br. 44; Dkt. 20, Pet'r's Reply Br. 26.  However, as Whitten points out, Ashton did not raise this argument in state court to support his claim that allowing Goff to invoke her right against self-incrimination violated his right to present a defense.  Dkt. 14, Resp. 37 n.8.  Regardless, even if this argument were properly before the Court, the Court would reject it.  *See Rivas-Macias*, 537 F.3d at 1280-81 (rejecting defendant's argument that a witness who refused to testify at defendant's trial "waived his right to claim the Fifth Amendment privilege, at least to the extent of his revelations to the Government," by giving "unsworn statements to authorities").

But the fact that Goff faced a substantial risk of prosecution that has not been realized does not undermine the objective reasonableness of the OCCA's decision that the trial court properly permitted Goff to invoke her Fifth Amendment privilege.  Third, to the extent Ashton suggests the OCCA misunderstood the facts relevant to this claim, the record does not support that suggestion. The transcript from the evidentiary hearing instead supports the OCCA's view that the prosecutor sought to protect Goff's Fifth Amendment privilege by notifying the trial court, before Goff entered the courtroom, that Goff could be charged with a crime for her role in driving Ashton away from the parking lot immediately after she witnessed Ashton shoot Walker and Sawyer and that Goff may need to consult with an attorney before providing testimony that might be incriminating. [Dkt. 15-1, Tr. Evidentiary Hr'g 41-45.]  For these reasons, the Court agrees with Whitten that § 2254(d) bars relief and thus denies that portion of claim four that challenges the OCCA's decision regarding Goff's invocation of her Fifth Amendment privilege against self-incrimination.

### b.    Exclusion of Goff's out-of-court statements

As to the third argument regarding the trial court's ruling on the admissibility of Goff's out-of-court statements, the OCCA concluded that the trial court did not abuse its discretion in applying state evidentiary rules to exclude the proffered statements.  The OCCA first described the statements at issue:

> During discovery proceedings, the State disclosed a Summary of Goff's out-of-court statements to Appellant.  The Summary was based off of notes which one of the prosecutors had taken when the State had met with Goff.  After Goff invoked her privilege against self-incrimination and became unavailable as a witness at trial, Appellant sought to introduce this Summary under the statement against penal interest exception to the hearsay rule.  Appellant requested that a portion of the Summary be read to the jury or, alternatively, the admission of the document as an exhibit.  The trial court denied Appellant's request.

*Ashton*, 400 P.3d at 895.  The OCCA concluded that the trial court's exclusion of the statements was not an abuse of discretion.  The OCCA reasoned that "[t]he statements in the Summary

document constituted hearsay within hearsay," that "Goff's statements fell within the statement against penal interest exception," and that Ashton failed to show "that the prosecutor's hearsay statements summarizing Goff's story met a recognized hearsay exception." *Id.* at 895-96. Applying controlling legal principles from *Crane v. Kentucky*, 476 U.S. 683 (1986), and *Chambers v. Mississippi*, 410 U.S. 284 (1973), the OCCA further concluded that the trial court's evidentiary ruling did not violate Ashton's constitutional right to present a meaningful defense. *Ashton*, 400 P.3d at 893, 895-96. On that point, the OCCA reasoned:

> Goff's testimony would have been cumulative to Appellant's other evidence. *Gourley v. State*, 1989 OK CR 28, ¶ 4, 777 P.2d 1345, 1348 (finding defendant not denied right to present defense where witness' testimony would have been cumulative). Brown testified on Appellant's behalf at trial and related a substantially similar account as set forth in the proffered Summary. Appellant gave an analogous story when he testified at trial. As Goff's statements in the Summary were cumulative to the other evidence at trial, we find that exclusion of the Summary did not violate Appellant's right to present a defense.
>
> We further find that there is no indication that admission of Goff's statements from the Summary would have created a reasonable doubt where none had existed before. The prosecutor's Summary was not critical to Appellant's defense. *Primeaux v. State*, 2004 OK CR 16, ¶¶ 49–54, 88 P.3d 893, 903–04 (recognizing that evidence was not critical to defendant's case where there was no indication that witness's statement would create reasonable doubt where none existed before). The State presented compelling evidence of Appellant's guilt. Four wholly uninvolved individuals witnessed Appellant shoot and kill the unarmed Walker and Sawyer without provocation. Their consistent accounts substantially differed from Appellant's claimed defense at trial. In contrast, Appellant's evidence was disputed. Brown had given the police a different account of the events immediately following Appellant's arrest. Appellant's story had dramatically changed over time. He fled the scene after the shooting and denied even being present at the complex that day when the police first questioned him. In addition to being cumulative, Goff's testimony would have been subject to the same impeachment as Brown's account. As with Brown, Goff had related a different account to the police officers immediately following Appellant's arrest. Since Goff's statements in the Summary would not have created a reasonable doubt where none existed before, we find that they were not critical to Appellant's defense.

*Ashton*, 400 P.3d at 896.

In this proceeding, Ashton emphasizes the importance of Goff's testimony to his claim that

he shot Walker in self-defense and appears to argue that the OCCA should have found it clear that the trial court abused its discretion by refusing to admit Goff's out-of-court statements as statements against penal interests.  [Dkt. 9, Pet'r's Br. 44; Dkt. 20, Reply Br. 24-27.]  For legal support, Ashton cites three Supreme Court cases—*Holmes*, *Crane*, and *Washington v. Texas*, 388 U.S. 14 (1967)—for the broad propositions that a criminal defendant has a right to present a meaningful defense at trial and evidentiary rules cannot infringe on that right if those rules "serve no legitimate purpose."  [Dkt. 9, Pet'r's Br. 41-46; Dkt. 20, Reply Br. 23-28.]  These general propositions, however, do not advance Ashton's position.  The OCCA thoroughly explained why the trial court did not err in excluding Goff's hearsay statements under state evidentiary rules.  In doing so, the OCCA agreed with Ashton that Goff's statements were statements against penal interest.  But the OCCA also agreed with the trial court that Ashton failed to show how the prosecutor's hearsay statements about Goff's statements were admissible.  More importantly, the OCCA reasonably applied controlling Supreme Court precedent when it concluded that the trial court did not apply an illegitimate evidentiary rule to exclude Goff's statements and that the effect of the exclusion did not, in light of the record as a whole, violate Ashton's right to present a defense.

Having independently reviewed the trial transcripts, the Court finds that Ashton has not shown that the OCCA's decision as to this portion of claim four "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  Thus, § 2254(d) bars relief and the Court denies the petition as to this portion of claim four.

## B.    Prosecutorial misconduct (claim five)

Ashton claims several instances of prosecutorial misconduct deprived him of a fair trial.

[Dkt. 9, Pet'r's Br. 47.]   He alleges the prosecutor (1) intimidated Goff to prevent her from testifying as a defense witness, (2) argued facts not in evidence by describing the shootings as "execution style" more than once during closing arguments, (3) injected personal opinion by giving "her personal thoughts on Ashton's truthfulness," (4) elicited sympathy for the victims during closing arguments, and (5) argued that the jury could not consider Ashton's age or sympathy for him or his family in determining an appropriate sentence.   [Dkt. 9, Pet'r's Br. 47-50; Dkt. 20, Reply Br. 29-33.]

## 1.   Clearly established federal law

Prosecutorial misconduct can violate the Constitution in two ways.   First, a prosecutor's remarks or actions may prejudice a defendant's specific constitutional right "as to amount to a denial of that right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).   Second, a prosecutor's remarks or actions may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (alteration added) (quoting *DeChristoforo*, 416 U.S. at 643.   A reviewing court evaluating a prosecutorial-misconduct claim must consider the alleged misconduct in the context of the "entire proceedings, including the strength of the evidence against the defendant." *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015).   Because the due-process "standard is a very general one," *Parker v. Matthews*, 567 U.S. 37, 48 (2012), reviewing courts have "more leeway . . in reaching outcomes in case-by-case determinations," *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).   Federal habeas courts necessarily must consider that "leeway" in determining whether a state court has unreasonably applied the due-process standard in adjudicating a prosecutorial-misconduct claim. *Parker*, 567 U.S. at 48-49.

2.      **Analysis**

Ashton raised the same prosecutorial-misconduct claim on direct appeal, and the OCCA

rejected it.   Because Ashton did not object to the alleged instances of misconduct, the OCCA

applied its plain-error standard of review.   *Ashton*, 400 P.3d at 897.   The OCCA acknowledged

that Ashton alleged a violation of his right to due process and stated that "[a]llegations of

prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was

such [as] to deprive the defendant of a fair trial."   *Id.* (citation omitted).   The OCCA then evaluated

each allegation and, ultimately, determined that the alleged misconduct did not deprive Ashton of

a fundamentally fair trial.   *Id.* at 897-900.

In this proceeding, Ashton asserts that the OCCA's determination "that the prosecutor did

not substantially interfere with Goff's decision to testify" "is obviously wrong."   [Dkt. 9, Petr's

Br. 48.]   As to his remaining allegations of prosecutorial misconduct, Ashton merely reasserts the

same arguments he presented to the OCCA, without reference to the OCCA's decision, and asks

this Court to conclude that he was deprived of a fair trial, "in violation of the principles of"

*DeChristoforo*.   [Dkt. 9, Pet'r's Br. 49-50.]

For three reasons, the Court finds that § 2254(d) bars relief as to the prosecutorial-

misconduct claim.   First, the OCCA correctly identified the controlling legal principle from

*DeChristoforo* to evaluate Ashton's general allegations of misconduct when it cited its own

decision for the proposition that reversible prosecutorial misconduct requires a showing that the

"cumulative effect" of improper remarks or actions "deprive[d] the defendant of a fair trial."   *Bland*

*v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).   Thus, the OCCA's decision, as to Ashton's

general allegations of misconduct, is not contrary to clearly established federal law.   Second,

Ashton's arguments do not suggest, much less show, that the OCCA unreasonably applied the

24

fundamental-fairness test when it carefully evaluated each alleged instance of misconduct to determine first, whether misconduct occurred and second, whether the cumulative effect of any misconduct deprived Ashton of a fair trial.  Instead, Ashton effectively ignores the OCCA's decision regarding the general allegations of misconduct and appears to ask this Court to engage in de novo review of this claim.  For these reasons, Ashton's arguments regarding the general allegations of prosecutorial misconduct do not suffice to overcome the limitations imposed by § 2254(d)(1).

Third, the OCCA reasonably applied clearly established federal law when it took "special care" to consider whether the prosecutor's alleged intimidation of Goff violated Ashton's specific right to present a defense.  *See DeChristoforo*, 416 U.S. at 643 ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them.").  Applying the more specific reasoning from *Webb v. Texas*, 409 U.S. 95 (1972), the OCCA concluded that the record did not support Ashton's allegations that the prosecutor intimidated Goff and prevented her from testifying.  *Ashton*, 400 P.3d at 897-99.  In *Webb*, the Supreme Court determined that a trial judge cannot substantially interfere with a defense witness's decision to testify.  409 U.S. at 98.  The OCCA noted that it had previously extended *Webb*'s rule to state prosecutors.  *Ashton*, 400 P.3d at 897-98.  The OCCA explained that in its prior decision it "held that if a prosecutor threatens a defense witness with future charges by virtue of the witness' testimony, and the witness then refuses to testify, the defendant has been deprived of his right to present witnesses, and reversal of the conviction is required." *Id.* at 898 (quoting *Mills v. State*, 1985 OK CR 58, ¶ 3, 733 P.2d 880, 883 (opinion on rehearing)).  But the OCCA found that the circumstances of Ashton's case required the OCCA to "distinguish between an improper threat and a proper warning concerning the consequences of

testifying." *Ashton*, 400 P.3d at 898.

In making that distinction, the OCCA discussed and applied the analytical framework from *United States v. Pablo*, 696 F.3d 1280 (10th Cir. 2012).  In *Pablo*, the Tenth Circuit explained that while "a witness may freely invoke his privilege against self incrimination even at the expense of the defendant's right to present a defense, 'the government cannot substantially interfere with a defense witness's decision to testify.'"  *Pablo*, 696 F.3d at 1295 (quoting *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005)).  The Tenth Circuit further stated,

> To determine if the government impermissibly interfered with a witness's decision to testify, we ask whether the government's interference was "substantial." [*Serrano*, 406 F.3d] at 1216 (quotations omitted).  "Interference is substantial when the government actor *actively discourages* a witness from testifying through threats of prosecution, intimidation, or coercive badgering."  *Id.* (emphasis added).  But "[t]he potential for unconstitutional coercion by a *government actor* significantly diminishes . . . if a defendant's witness elects not to testify after consulting an independent attorney."  *Id.*  By way of example, in *Serrano*, we found no substantial interference where the prosecution merely raised to the district court a legitimate concern about witnesses incriminating themselves if they testified and the district court simply expressed this concern to the witnesses and appointed independent counsel to advise them on that issue.  *Id.*

*Pablo*, 696 F.3d at 1295-96.  Finding *Pablo*'s analysis persuasive, the OCCA applied it and concluded

> that the prosecutor did not substantially interfere with Goff's decision whether to testify.  Neither the prosecutor nor the trial judge actively discouraged Goff from testifying.  Although the prosecutor advised the court, defense counsel, and Goff that she was potentially facing criminal charges based upon the circumstances which followed the homicides, the prosecutor did not threaten to charge Goff if she testified.  Instead, the prosecutor properly sought to have Goff advised concerning her rights.  The prosecutor approached the judge at the pretrial motion hearing, raised a legitimate concern about Goff unwittingly incriminating herself if she testified and requested that the judge appoint her legal counsel.  Defense counsel agreed with this request.
>
> We note that the prosecutor's initial remarks at the pretrial hearing were slightly emphatic.  The better practice is for the prosecution to more subtly raise its concern.  Nonetheless, the record reveals that Goff was not present during this portion of the hearing.  When the trial judge later spoke with Goff, he simply advised her that he thought it was in her best interests to have counsel to advise and

consult with and appointed her independent counsel.

Ultimately, Goff elected not to testify at [Ashton's] trial and invoked her Fifth Amendment privilege against self-incrimination. She testified that she based her decision upon the advice of her lawyer. As Goff based her decision upon the independent and competent advice of her counsel, we find that the prosecution did not substantially interfere with her decision concerning testifying. Accordingly, [Ashton] has not shown that error, plain or otherwise, occurred.

*Ashton*, 400 P.3d at 897-99 (footnotes omitted).

In his brief, Ashton summarizes several facts that he contends are sufficient to show that the prosecutor's intimidation caused Goff to invoke her Fifth Amendment privilege and asserts that the OCCA's "conclusion is obviously wrong." [Dkt. 9, Pet'r's Br. 47-48; Dkt. 20, Reply Br. 29-32.] He appears to allege that the OCCA's decision is based on an unreasonable determination of the facts. Specifically, he contends that, contrary to the OCCA's finding, "Goff was walking up to the witness stand to testify for Ashton when her trip there was interrupted by the prosecutor who threatened her with criminal charges, which prompted the trial court to appoint counsel." [Dkt. 9, Pet'r's Br. 48.] But the state record supports the OCCA's finding that Goff was not in the courtroom during the portion of the evidentiary hearing when the prosecutor "emphatic[ally]" advised the trial court that Goff could be charged with a crime and may need counsel. [*Ashton*, 400 P.3d at 899; Dkt. 15-1, Tr. Evidentiary Hr'g 41-45.] As a result, § 2254(d)(2) also bars relief as to the prosecutorial-misconduct claim. Because § 2254(d) bars relief, the Court denies the petition as to claim five.

### C.   Ineffective assistance of trial counsel (claim six)

Ashton claims he was deprived of his Sixth Amendment right to the effective assistance of trial counsel. He alleges trial counsel performed deficiently by "fail[ing] to have evidence tested that would have showed the true distance between Ashton and Walker at the time of the shooting, specifically the t-shirt worn by Walker that, according to the forensic pathologist Dr. Joshua

Lanter, had 'soot' around the bullet hole which indicated that the gun was likely fired from a distance of one foot or less." [Dkt. 9, Pet'r's Br. 51-52.] Ashton further alleges that but for trial counsel's failure to have the shirt tested and to present scientific proof that the soot was gunshot residue, "Ashton's claim of self-defense would have been supported and proven, which would have resulted in an acquittal at trial." [Dkt. 20, Reply Br. 37.]

### 1. Clearly established federal law

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a defendant alleging ineffective assistance of counsel must show deficient performance and resulting prejudice. 466 U.S. at 692. The *Strickland* standard is "highly deferential" because a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Significantly, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On federal habeas review, a court must apply added deference when reviewing a state court's decision on a *Strickland* claim. *See, e.g.*, *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (stating, "We have recognized the special importance of the AEDPA framework in cases involving *Strickland* claims," and concluding that the "the Court of Appeals erred in ordering issuance of a

writ of habeas corpus despite ample room for reasonable disagreement about the prisoner's ineffective-assistance-of-counsel claim" and "[i]n doing so . . . clearly violated [the Supreme] Court's AEDPA jurisprudence"); *Richter*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)).

### 2.    Analysis

The OCCA rejected Ashton's *Strickland* claim on direct appeal.  The OCCA noted that two witnesses, Dr. Lanter and Joy Patterson, discussed the process for testing a victim's clothing and other items to determine the distance between a victim and shooter, and the OCCA found it apparent from the record that trial counsel did not have Walker's shirt tested and thus did not present evidence of any test results at trial.  *Ashton*, 400 P.3d at 901.  The OCCA did not expressly decide whether counsel's performance was deficient.  *Id.*  Rather, it rejected the *Strickland* claim because Ashton did not show "a reasonable probability that the outcome of the trial would have been different but for counsel's omission."  *Id.*  On this point, the OCCA stated, "Nothing in the record establishes what the omitted testing would reveal."  *Id.*

The OCCA provided additional reasoning for its rejection of his *Strickland* claim when it considered his application for an evidentiary hearing.  *Ashton*, 400 P.3d at 901-02.  The OCCA stated,

> Reviewing the Affidavit and Criminalistics Examination Report attached to Appellant's application, we find that Appellant has not provided sufficient information to show this Court by clear and convincing evidence that there was a strong possibility that defense counsel was ineffective.  *Id.* From the materials attached to the application, it appears that Appellant has had [Walker's] shirt tested. However, this was only the first part of the process.  As Patterson explained in her testimony, both the gun and ammunition must be tested for completion of the distance determination process.  Thus, we are entirely left to speculate as to what completed testing would reveal. *Lott v. State*, 2004 OK CR 27, ¶ 135, 98 P.3d 318, 351 (holding Appellant must present evidence, not speculation, second guesses or

innuendo in order to meet clear and convincing standard of Rule 3.11);  *Stemple v. State*, 2000 OK CR 4, ¶ 61, 994 P.2d 61 (denying ineffective assistance claim where the appellant failed to show what the witness' testimony would have been).  In light of the testimony of the several eyewitnesses as well as Appellant's own admission, we find that he has not shown a reasonable probability that the outcome of the trial would have been different absent counsel's omission.  Appellant has not shown ineffective assistance of counsel under *Strickland*, therefore, his application is DENIED.

*Ashton*, 400 P.3d at 901-02.

In this proceeding, Ashton argues that because his "entire" defense at trial was self-defense, it was unreasonable for trial counsel not to test Walker's shirt to confirm whether the "soot" was gunshot residue.  [Dkt. 20, Reply Br. 37.]  He argues tested the "deficient performance and resulting prejudice is obvious and real" because if trial counsel had tested the shirt and presented scientific evidence of gunshot residue on Walker's shirt, "Ashton's claim of self-defense would have been supported and proven, which would have resulted in an acquittal at trial."  [Dkt. 20, Reply Br. 37.]

Both parties suggest that it may be appropriate to review this claim de novo, at least as to *Strickland*'s performance prong, because the OCCA rejected the *Strickland* claim by addressing only *Strickland*'s prejudice prong.  [Dkt. 14, Resp. 71-72; Dkt. 20, Reply Br. 34-35.]  The Court

questions whether de novo review is appropriate, but finds it unnecessary to resolve that question.[10]

Even if the Court adopts Ashton's view that trial counsel performed deficiently, the Court still

must deferentially evaluate the reasonableness of the OCCA's decision as to prejudice. *See Porter*,

558 U.S. at 39-41 (applying de novo review to portion of *Strickland* claim when state court did not

consider whether trial counsel performed deficiently but applying § 2254(d)(1) to determine

whether state court unreasonably applied *Strickland*'s prejudice prong). And, on the record

presented, Ashton has not shown that the OCCA's decision as to *Strickland* prejudice is "so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

First, the OCCA considered the test results from Walker's shirt when it denied Ashton's

request for an evidentiary hearing regarding the ineffective assistance of counsel claim he raised

on direct appeal. *See Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) ("[E]ven in cases

where the OCCA summarily disposes of a defendant's Rule 3.11 application without discussing

the non-record evidence, we can be sure that the OCCA in fact considered the non-record evidence

---

[10] *Strickland*, a pre-AEDPA case, suggested that courts could, and very often should, resolve Sixth Amendment claims without deciding both prongs of the *Strickland* analysis. *See* 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Later Supreme Court decisions, however, cast doubt on how federal habeas courts should review *Strickland* claims when a state court decision considers only one part of the *Strickland* analysis. *Compare Richter*, 562 U.S. at 98 (explaining that § 2254(d) applies when a state court adjudicates a "claim" not a particular element or component of a claim . . . .), *with Porter v. McCollum*, 558 U.S. 30, 39 (2009) (noting that because the state court rejected petitioner's *Strickland* claim solely based on an assessment of resulting prejudice, the Supreme Court would review trial counsel's performance de novo).

in reaching its decision."). Second, it was objectively reasonable for the OCCA to conclude, in light of the new evidence and the evidence presented at trial, that trial counsel's omission did not result in prejudice. *See Strickland*, 466 U.S. at 695 ("In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury"). Ashton is correct that eyewitnesses gave conflicting testimony about the distance between the two men when Ashton shot Walker. But, as Whitten argues, even if trial counsel had presented scientific evidence confirming that the "soot" on Walker's shirt was, in fact, gunshot residue, that evidence would have been cumulative. Several witnesses, including Ashton, testified that Ashton and Walker were relatively close at the time of the shooting. And Dr. Lanter testified that the substance on Walker's shirt appeared to be soot and a typical handgun would leave soot if the victim and shooter were a foot or less apart. Moreover, even assuming test results confirming the presence of soot on Walker's shirt had been introduced at trial, and the jury had found credible the testimony of those witnesses who testified that the two men were close together, the jury could still reject Ashton's theory that he acted in self-defense based on the evidence as a whole. As previously discussed, the jury heard evidence that Walker and Sawyer were unarmed, that Ashton responded to Walker's purported statements and a perceived threat of harm from Walker by pulling out a gun and pointing it at Walker while the two men argued in a parking lot, that Ashton shot Walker in the abdomen, that Ashton then moved toward Sawyer and shot her as she turned to run from him, and that Ashton returned to Walker's location and shot Walker a second time before fleeing the scene. The trial court instructed the jury on Ashton's theory that he acted in self-defense and also instructed the jury on lesser included offenses. The jury, however, resolved all conflicting evidence against Ashton and found that he intentionally killed both victims with malice aforethought. Contrary to Ashton's position, the presentation of scientific test results bolstering

his testimony that he and Walker were one foot or less apart would not necessarily have demanded an acquittal as to Walker's murder, much less as to Sawyer's.

In sum, it was not objectively unreasonable for the OCCA to conclude that there was no reasonable probability of a different outcome at trial but for trial counsel's failure to present scientific evidence that Ashton shot Walker in the abdomen at close range. And without a showing of prejudice, it was objectively reasonable for the OCCA to reject Ashton's Sixth Amendment claim. Because § 2254(d) bars relief, the Court denies the petition as to claim six.

**IV.    Ineffective assistance of appellate counsel (claim one)**

In claim one, Ashton contends he received ineffective assistance of appellate counsel. [Dkt. 9, Pet'r's Br. 26-32.] Ashton alleges that appellate counsel performed deficiently (1) by failing to argue that trial counsel was ineffective "for failing to have the gun and ammunition tested (along with the 'soot' on the shirt worn by Walker) in order to determine with reasonable scientific certainty the distance of the gun from the shirt when it was fired," and (2) by "fail[ing] to recognize the importance of testing the gun and the ammunition," and failing to have those two items tested when appellate counsel submitted Walker's shirt for forensic testing, because it was clear from expert testimony that all three items must be tested to determine the distance between Ashton and Walker at the time of the shooting. [Dkt. 9, Pet'r's Br. 27-28; Dkt. 20, Reply Br. 10-11.] Ashton further alleges that appellate counsel's deficient performance resulted in prejudice because the "failure to have the gun and the ammunition tested was the *reason* why the OCCA denied the [ineffective-assistance-of-trial-counsel claim]—because [the OCCA] would have been left to speculate absent testing of the gun and ammo." [Dkt. 9, Pet'r's Br. 32 (emphasis in original)] Ashton also "asserts that he was prejudiced because, had the gun and the ammunition been tested, the result would have been a scientific finding that Ashton was one foot or less away from Walker

at the time of the shooting which would have given iron-clad scientifically based evidentiary support for his self-defense claim—and confirmed the opinion of the medical examiner." [Dkt. 9, Pet'r's Br. 28.]

### A.    Clearly established federal law

The Sixth Amendment right to the effective assistance of counsel extends to a criminal defendant's first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). Similarly, *Strickland*'s deferential standard for evaluating whether counsel provided constitutionally adequate representation extends to a criminal defendant's claim that appellate counsel was ineffective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Generally, "[t]o prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that counsel was objectively unreasonable in failing to raise or properly present a claim on direct appeal, and that there is a reasonable probability that, but for this unreasonable failure, the claim would have resulted in relief on direct appeal." *Fairchild v. Trammell*, 784 F.3d 702, 715 (10th Cir. 2015). When applying *Strickland* to consider whether appellate counsel performed deficiently, reviewing courts necessarily must "look to the merits of" the issue that was either not raised or, in the defendant's view, not adequately presented. *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

### B.    Analysis

Ashton raised this same ineffective-assistance-of-appellate-counsel claim in his application for postconviction relief. [Dkt. 14-5, Appl. for PC Relief 10-16.] Ashton also requested an evidentiary hearing and an order directing the State to provide him access to the gun and

ammunition so that he could develop a record sufficient to show that appellate counsel's deficient performance in failing to have these two items tested resulted in prejudice. [Dkt. 14-5, Appl. for PC Relief, 14-16.] The state district court denied his request for an evidentiary hearing and, for two reasons, rejected his claim. First, the state district court reasoned that Ashton was seeking to relitigate the same ineffective-assistance-of-trial-counsel claim he raised on direct appeal and that *res judicata* barred his effort to do so. [Dkt. 14-7, Dist. Ct. Order 10.] Second, the state district court reasoned that Ashton could not establish prejudice because, "[e]ven if further testing was completed and results were in [his] favor, which is not guaranteed, it is insufficient to overcome the overwhelming amount of evidence against [Ashton], including [his] own admission at trial. As there was no prejudice, counsel was not ineffective." [Dkt. 14-7, Dist. Ct. Order 10.]

On postconviction appeal, the OCCA likewise rejected Ashton's ineffective-assistance-of-appellate-counsel claim. The OCCA appeared to agree with the state district court that *res judicata* barred relief. The OCCA stated that Ashton argued, in part, that the state district court

> improperly analyzed his ineffective assistance of appellate counsel claim and ignored [the OCCA's] "clear command" on direct appeal that testing of the gun and ammunition were critical in the context of Ashton's direct appeal claim of ineffective assistance of trial counsel. He claims that testing of these items is equally important to his claim of ineffective assistance of appellate counsel.

[Dkt. 14-9, OCCA Order 7.] After discussing the limited grounds for postconviction relief available under state law and the procedural bars of *res judicata* and waiver, the OCCA noted that Ashton argued, on direct appeal, that trial "counsel should have presented evidence to show that he was a foot or less from the victim at the time of the shooting." [Dkt. 14-9, OCCA Order 7-8.] The OCCA further noted that it had denied Ashton's request for an evidentiary hearing, on direct appeal, based on its finding that he failed to establish the requisite prejudice regarding trial counsel's ineffectiveness for failing to test Walker's shirt. [Dkt. 14-9, OCCA Order 9.] The OCCA then stated,

> Ashton's request for an evidentiary hearing on post-conviction review does not differ from the Application which he filed during the direct appeal. The request presents no new or additional information or evidence. Since these issues were previously raised and ruled upon by [the OCCA], Ashton's claims on post-conviction review are procedurally barred from further review under the doctrine of *res judicata*.

[Dkt. 14-9, OCCA Order 9.] The OCCA thus affirmed the state district court's denial of Ashton's application for postconviction relief.

In this proceeding, Ashton argues, and Whitten agrees, that the OCCA improperly applied *res judicata* to bar relief because Ashton first presented his ineffective-assistance-of-appellate counsel claim during postconviction proceedings. [Dkt. 9, Pet'r's Br. 31-32; Dkt. 14, Resp. 13-14.] Both parties therefore urge the Court to review claim one de novo, rather than under § 2254(d)'s framework, because the OCCA did not adjudicate the merits of this claim. [Dkt. 9, Pet'r's Br. 31-32; Dkt. 14, Resp. 13-14.] The Court agrees that de novo review is appropriate. *See Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 898 (10th Cir. 2019) (noting that de novo review applies to claims that a state court did not adjudicate on the merits). And, as both parties point out, even assuming the OCCA properly applied *res judicata*, that would not preclude de novo review. *See Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). Before reviewing the merits of claim one, however, the Court must consider Ashton's request for an evidentiary hearing.

### 1.    Evidentiary hearing

As previously noted, Ashton contends that he diligently sought an evidentiary hearing in state court so that he could have the gun and the ammunition tested and present the test results to "bolster his constitutional claims." [Dkt. 20, Reply Br. 16-17.] Ashton now contends that it would be appropriate for this Court to hold an evidentiary hearing and, possibly, order testing of the gun

and ammunition so that this Court may consider that evidence in evaluating claim one.

Under the particular circumstances of this case, the Court concludes that no evidentiary hearing is warranted. As Whitten contends, the AEDPA and Supreme Court precedent impose "stringent" requirements that must be met before a federal habeas court can exercise its discretion to hold an evidentiary hearing. 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728, 1734 (2022); *Pinholster*, 563 U.S. at 181. But even assuming Ashton is correct that these requirements pose no bar to granting his request for an evidentiary hearing because he diligently attempted to develop the factual record in state court, the Court finds the existing record sufficient to adjudicate claim one.

That claim, to the extent the Court understands it correctly, asserts a two-prong attack on the adequacy of appellate counsel's representation. First, appellate counsel failed to argue that trial counsel was ineffective, not only for failing to test Walker's shirt, but also for failing to test the gun and ammunition. Second, appellate counsel failed to test the gun and the ammunition despite clear evidence in the record that testing of those two items, along with Walker's shirt, was necessary to determine the distance between Ashton and Walker. Even assuming without deciding (1) that appellate counsel performed deficiently for both reasons alleged and (2) that testing of the gun and ammunition would have resulted in a reasonably certain scientific finding that Walker and Ashton were one foot or less away from each other when Ashton shot Walker, an evidentiary hearing is not needed because, as discussed next, Ashton cannot show that appellate counsel's allegedly deficient performance resulted in prejudice. *See Boyle v. McKune*, 544 F.3d 1132, 1136-40 (10th Cir. 2008) (assuming petitioner was diligent in developing the factual basis of his *Strickland* claim in state court, but finding petitioner was not entitled to an evidentiary hearing because even if petitioner's allegations were true, he could not show *Strickland* prejudice).

### 2.    Prejudice analysis

As just stated, the Court assumes without deciding that appellate counsel performed deficiently for the reasons Ashton alleges.  However, because claim one alleges a Sixth Amendment violation occurred during the direct appeal—and both relate to appellate counsel's presentation of the ineffective-assistance-of-trial-counsel claim, the prejudice inquiry asks whether, but for appellate counsel's allegedly deficient performance, there is a reasonable probability that the OCCA would have granted Ashton relief on Ashton's underlying claim that trial counsel was ineffective for failing to test and present scientific evidence establishing the distance between Ashton and Walker at the time of the shooting.

### a.    Failure to adequately argue trial counsel's ineffectiveness

Appellate counsel's failure to argue that trial counsel should have tested the gun and ammunition did not result in prejudice.  Given that both state courts had already determined that trial counsel's failure to test Walker's shirt, even if deficient, was not prejudicial, it is easy to understand why both state courts reasoned that *res judicata* barred Ashton's postconviction claim that appellate counsel was ineffective for failing to argue trial counsel also performed deficiently by failing to test the gun and ammunition.  Both courts noted that Ashton was essentially trying to repackage the ineffective-assistance-of-trial-counsel claim under the guise of a claim that appellae counsel was ineffective.  In any event, regardless of whether trial counsel performed deficiently by failing to test only one item or by failing to test all three items, this Court finds, based on its independent review of the totality of the evidence, that there is no reasonable probability of a different outcome at trial had trial counsel presented scientific evidence at trial, based on the testing of all three items, that Ashton was one foot or less from Walker.

As just discussed in the context of claim six, even if trial counsel had presented scientific

evidence confirming that the "soot" on Walker's shirt was, in fact, gunshot residue, that evidence would have been cumulative because several witnesses, including Ashton, testified that Ashton shot Walker at close range.  And, contrary to Ashton's assertion, scientific test results confirming the presence of gunshot residue on Walker's shirt would not have required the jury to acquit him of Walker's murder based his claim that he shot Walker in self-defense.  As previously discussed, the jury heard evidence that Walker and Sawyer were unarmed, that Ashton responded to a perceived threat of harm from Walker by pulling out a gun and pointing it at Walker while the two men argued in a parking lot, that Ashton shot Walker in the abdomen, that Ashton then moved toward Sawyer and shot her as she turned to run from him, and that Ashton returned to Walker's location and shot Walker a second time.  The fact that the jury did not hear reasonably certain scientific evidence that Walker had gunshot residue on his shirt and that the two men were a foot or less apart from each other when Ashton shot him, does not undermine this Court's confidence in the jury's verdict.  Because Ashton cannot show *Strickland* prejudice as to the ineffective-assistance-of-trial-counsel claim, he necessarily cannot show that he was prejudiced by appellate counsel's allegedly deficient performance in omitting from that claim an allegation that trial counsel also should have tested the gun and the ammunition.  Thus, to the extent Ashton alleges appellate counsel performed deficiently by failing to argue *trial* counsel should have tested the gun and ammunition, the Court finds no prejudice.

### b.     Failure to test the gun and ammunition

Likewise, as to Ashton's allegation that appellate counsel performed deficiently by failing to test the gun and ammunition, along with the shirt, to support the ineffective-assistance-of-trial-counsel claim, the Court finds no prejudice because there is no reasonable probability that, but for appellate counsel's failure to have this additional testing done, the OCCA would have reached a

different conclusion on direct appeal as to *Strickland* prejudice on the underlying ineffective-assistance-of-trial-counsel claim.   As previously discussed, Ashton presented some scientific evidence to the OCCA on direct appeal, namely the test results confirming that Walker had gunshot residue on his shirt, to support his claim that trial counsel was ineffective for failing to test, and present evidence at trial, showing that the two men were close to each other at the time of the shooting.

This Court is not persuaded that presenting additional test results to the OCCA on direct appeal, following Ashton's requested testing of the gun and ammunition, would have altered the OCCA's evaluation of *Strickland* prejudice as to Ashton's underlying ineffective-assistance-of-trial-counsel claim.   To be fair, the OCCA did state, in part, that because appellate counsel did not test the gun and ammunition, the OCCA was "left to speculate" what testing of the gun and ammunition would have revealed.   *Ashton*, 400 P.3d at 901-02.   But the OCCA further stated that, in light of all evidence presented at trial, Ashton failed to show *Strickland* prejudice as to trial counsel's failure to test Walker's shirt for gunshot residue.   *Id.*

Ashton does not explain, and this Court fails to see, how it is reasonably probable that the OCCA would have granted relief on the ineffective-assistance-of-trial-counsel claim if only appellate counsel had presented test results from the gun and the ammunition, along with the shirt, to show with reasonable scientific certainty that Ashton shot Walker at close range.   The test results from Walker's shirt, alone, established that the suspected "soot" near Walker's abdominal wound was gunshot residue.   And Dr. Lanter testified, based on his training and experience, "that in a white T-shirt with a typical handgun" soot would be found if the shirt is "about a foot or closer from the weapon."   [Dkt. 15-7, Tr. Trial vol. 5, 60.]   Ashton admitted at trial that he shot Walker in the abdomen, and ballistics testing confirmed that Ashton shot Walker with the .38 special

revolver law enforcement officers found at Ashton's mother's house, next to three spent shell casings.  Even without test results from the gun and the ammunition to "complete" the testing process described by Dr. Lanter and Joy Patterson, the ballistics expert, it is reasonable to infer that the two men likely were one foot or less apart when Ashton shot Walker in the abdomen with the .38 revolver, a typical handgun, leaving soot on Walker's white t-shirt.  Contrary to Ashton's apparent argument, appellate counsel's failure to test the gun and the ammunition was not critical.  Thus, to the extent Ashton alleges *appellate* counsel performed deficiently by failing to test the gun and ammunition and present the results of that testing to the OCCA on direct appeal to bolster the claim that trial counsel was ineffective, the Court finds no prejudice.

Based on the foregoing, the Court denies the petition as to claim one.

### CONCLUSION

The Court concludes that Ashton has not established that he is in state custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  The Court therefore denies his petition for a writ of habeas corpus.  The Court further concludes that reasonable jurists would not debate this Court's assessment of Ashton's properly presented constitutional claims or its determination that some claims were not properly presented for habeas review.  *See* 28 U.S.C. § 2253(c)(2) (providing that a district court may issue a certificate of appealability "only if the [petitioner] has made a substantial showing of the denial of a constitutional right"); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").  The Court therefore declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Rick Whitten in place of

   R.C. Smith as party respondent.

2. Ashton's request for an evidentiary hearing is **denied**.

3. The petition for writ of habeas corpus (Dkt. 2) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

   **DATED** this 9th day of August 2022.

   GREGORY K. FRIZZELL
   UNITED STATES DISTRICT JUDGE